Filed 1/23/23  Beverly v. Newport Beach Police CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRALA BEVERLY,<br><br>　　Plaintiff and Appellant,<br><br>　　　v.<br><br>NEWPORT BEACH POLICE DEPARTMENT et al.,<br><br>　　Defendants and Respondents. | G061261<br><br>(Super. Ct. No. 30-2020-01153964)<br><br>O P I N I O N |

　　　　　Appeal from a judgment of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed. Motions for judicial notice denied.

　　　　　Brala Beverly, in pro. per., for Plaintiff and Appellant.

　　　　　Burke, Williams & Sorensen, Susan E. Coleman, and Natalie F. Price for Defendants and Respondents.

　　　　　　　　　　*　　　　*　　　　*

Brala Beverly sued the Newport Beach Police Department[1] (the Department) for various causes of action arising from her alleged unlawful arrests in 2011 for petty theft of almond milk from a grocery store, and in 2019 for both petty theft of a charging cord from an Apple store and battery.

The trial court sustained the Department's demurrer to her first amended complaint, but offered Beverly leave to amend six of her seven causes of action. Beverly declined to amend, preferring to stand on her complaint as alleged; the court then dismissed the case.

On appeal, Beverly argues the court erred in a variety of ways, which included (1) declining to consider her second and third filed oppositions to the demurrer, (2) construing her first cause of action as alleging "false arrest" instead of "false imprisonment," (3) concluding there was probable cause for her arrests, (4) exhibiting bias against Beverly by claiming she "imagined" her claims and by assuming the validity of a warrant issued in Beverly's prior name, (5) ignoring United States Supreme Court rulings about malicious prosecution claims against police, (6) concluding the police owe no duty of care to citizens, (7) misconstruing the Tom Bane Civil Rights Act (Civ. Code, § 52.1, Bane Act) and the Ralph Civil Rights Act of 1976 (Civ. Code, § 51.7, Ralph Act), and (8) dismissing her intentional tort and assault and battery claims based solely on its dismissal of the false arrest claim. None of the arguments provide a basis for reversal.[2] We therefore affirm the judgment.

---

[1]     The Newport Beach Police Department appeared as the defendant in the trial court, but subsequently identified itself in pleadings as "City of Newport Beach (erroneously sued as Newport Beach Police Department)." (Some capitalization omitted.) Beverly later amended her complaint to name the City of Newport Beach as a doe defendant.

[2]     In two separate motions, Beverly has also requested that we take judicial notice of documents relating to a criminal complaint of sexual assault she made in 2010. We deny the motions because the documents were not part of the record below and thus

Probable cause for an arrest is determined by applying an objective standard, and the allegations of Beverly's complaint and the police reports she attached to it establish that her arrests were supported by probable cause. Beverly does not allege the police falsified the third party evidence in the reports, or that they had any reason to believe the third party reports were false. Once probable cause is established, the subjective motivations or beliefs of the arresting officers becomes irrelevant. In the absence of any other misconduct, Beverly can state no cause of action under the Bane Act or the Ralph Act, nor any cause of action for intentional tort, or assault and battery. Her cause of action for malicious prosecution fails because the police have immunity under state law.

In any event, even if we believed the court had erred by refusing to consider Beverly's additional oppositions to the demurrer, or by construing her first cause of action as alleging false arrest rather than false imprisonment—and we hold no such beliefs—neither would support reversal because Beverly fails to demonstrate prejudice.

Finally, we are not persuaded by Beverly's contention that the trial court was biased against her. The court did not rule she "imagined" her claims. And Beverly's assertion that no reasonable court could conclude the failure to appear warrant, issued in her prior name, was valid against her fails because she alleges no facts to support that conclusion.

## FACTS

Beverly filed her initial complaint against the Department in August 2020. The Department removed the case to the United States District Court, but the court

cannot be relied upon on appeal. In any event, the fact that Beverly made such a criminal complaint is alleged in her current civil complaint, and thus is presumed true for purposes of demurrer. The same is true of any additional factual details alleged.

3

granted Beverly's motion to remand the case back to state court after she agreed to dismiss her federal claims.

Following remand, Beverly filed her first amended complaint alleging seven causes of action against the Department under state law. Her first cause of action, entitled False Imprisonment, alleges it arises out of "three arrests, two arrests on the same charge stemming from a 2011 incident . . . regard[ing] a $4 stolen drink from a grocery store" and a separate "2019 Apple [store] arrest." Beverly acknowledges that what she describes as her second arrest on the first charge stemmed from the Department's discovery of a failure to appear warrant that had been issued in connection with the 2011 charge when the Department booked her on the 2019 Apple store charge.

The 2011 police report—included as an attachment to Beverly's complaint—reflects that a store employee saw Beverly (then known as Brant Jason Skiles) "kneeling on the floor placing items in a multicolor bag." The employee believed Beverly was stealing items from the store. He went to the front of the store to report his observations to the manager, and just as he arrived, he saw Beverly "walk quickly out the main door with the multicolored bag" which "appeared to be full." The employee called after Beverly in an attempt to get her to stop, but when he got near she began running. The employee chased Beverly, but he was unable to catch her.

The employee then contacted the police to report the incident; while an officer was taking information, the occupants of "air unit HB-1" reported they had spotted a person matching Beverly's description a few blocks away. Another police unit responded and detained Beverly until the officer interviewing the store employee could transport the employee to identify her. After the employee identified Beverly as the person he saw inside the store, the transporting officer—who recognized Beverly as someone he then knew as "Brooke"—spoke with her and she told him, she "was hungry and living on the street so [she] took the carton of Silk Almond Milk to drink." When the officer told her she had been observed stuffing multiple items in her bag, she responded

4

that she had been stuffing clothing in her bag "and only took the Silk brand milk from the store because [she] was hungry." A "cool half gallon of chocolate flavored Silk Almond milk was found in [Beverly's] bag" and the officer noted approximately half the contents were gone. As Beverly was being placed in the back of a police transportation van, she told the officer she was "sorry for taking your time. It is what it is."

Beverly alleges the Department had "an ulterior motive" and engaged in "unusual police conduct" both "during the initial arrest and subsequent" which had "nothing to do with any drink at a store," but was instead based upon her prior complaint of sexual assault against a prominent entertainment figure. Specifically, Beverly alleges it was unusual that "[t]he police chased [her] down over this drink for hours while not anywhere even near a grocery store," "[m]any officers confronted [her] on Pacific Coast Highway as she walked," and she "was ultimately taken away in a pa[dd]y wagon by as many as 5 officers in multiple vehicles after discussion by the police about the sex assault case."

As additional evidence of the connection between her arrest and her earlier sexual assault complaint, Beverly further alleges that "officer Syvack . . . later declined to forward video depositions of the perpetrator in that case essentially admitting to the sex assault to the DA for sex assault prosecution," and "the drink arresting officer Sherwood stated she would change testimony about the perpetrator [of the sexual assault] if Plaintiff did not say she took the drink at the scene of this 2011 incident."[3]

---

[3] Although Beverly refers to Sherwood as the "arresting officer," the police report identifies a different officer, coincidentally also named Beverly, as the arresting officer in the 2011 drink theft case. The report states it was he who spoke to appellant Beverly about the incident at the scene of her detention after she had been identified by the store employee. Officer Sherwood was one of the officers who initially detained Beverly in that incident, her supplemental report, also attached to the complaint, does not reflect they spoke at the scene.

5

Beverly claims "[p]olice would not normally bring a pa[dd]y wagon and search all hours of the day with multiple squad cars for an individual accused of taking groceries from a store," but did so "in this case [because] the suspect was described by a store employee as the transgender female they knew only because of the sex assault police report where they refused to prosecute the rapist due [to] plaintiff being transgender [and] assailant's Hollywood film status, which he boasted of to them. As a result they took much extra effort in finding [appellant]."

Beverly also alleges "[t]he police had an agenda to frame [her] or get her DNA after a false arrest to satisfy their false suspicions about her as a person generally as a result of their prejudices against [her] as a transgender sexual assault victim."

Beverly alleged the 2011 police report did not support probable cause for her arrest because it "claimed a store employee remarked that many items were taken from the store and put in [her] bag" when a photo taken at the time showed her bag was full of clothing and held only one drink from the store.

Beverly alleges her 2019 arrest came after the police were called to the Apple store in Newport Beach "by a bigoted security guard who identified [Beverly] as a 'he-she' . . . ." She acknowledges the security guard reported to the police that she had stolen an iPhone charging cord and assaulted him.

The police report for the 2019 incident, which Beverly also attaches to her complaint, states Beverly was observed taking a charging cable while in the Apple store, and attempting to conceal it in her hand. She then walked to the front of the store past several other store associates, and continued out the door while appearing to talk on her cell phone—and while still holding the cord in her hand.

Beverly was contacted by an Apple loss prevention officer outside the store, who identified himself and asked her about the cable. Beverly said something to him about speaking to Verizon on the phone and the cable being under warranty. He responded that the cable she had taken from the store did not belong to Verizon, so her

6

claim was not possible. When he attempted to detain Beverly, she became uncooperative, flailed her arms causing a minor injury to the loss prevention officer.

After the police arrived, an officer spoke to Beverly who explained to him she had gone to the store to exchange broken charging cables that were still under warranty. She showed the officer two cables in her purse, which appeared to have frayed wires. She said she wanted to make an appointment at the "Genius Bar" and was directed by a store associate to speak to a different associate near the store entrance about making an appointment. Instead, Beverly went "2 inches" outside of the store, while still in possession of the cable she had taken, to talk to an associate who was just outside the door monitoring a line.

The first store associate Beverly had spoken to confirmed to the police officer that Beverly had asked her about a Genius Bar appointment, but said Beverly had said nothing about exchanging a charging cable under warranty. The associate stated she had advised Beverly to speak with a different associate "'up front' near the entrance," but did not tell Beverly to exit the store. Based upon that information, the police officer concluded he had probable cause to arrest Beverly for petty theft and battery.

Beverly alleges in her complaint that "[n]either police report in this case lines up with probable cause, let alone statements made by [Beverly] at the time of the arrests." She alleges the report of the 2019 arrest confirms she was making a Genius Bar appointment when handcuffed, and that she had phone cords in her possession to exchange. She reiterates that the 2011 report was based on an employee's claim that "many items were taken, yet police say they did not find many items."

Beverly alleges the charges from both the 2011 and 2019 incidents were later dismissed, allegedly because neither was captured on security cameras. But despite the alleged lack of evidence, the police "solicited the DA to prosecute these cases after the arrests" which "speaks to their malicious prosecution efforts let alone lack of probable cause."

7

Beverly's cause of action under the Bane Act alleges the Department made a wrongful arrest, and did so based on a determination to violate her constitutional rights out of gender animus. She alleges the animus against her is linked to her complaint for sexual assault filed against a person prominent in the Hollywood film industry.

Beverly's cause of action under the Ralph Act is also grounded on the assertion that she was falsely arrested on concocted charges based on her gender identity. As additional facts, Beverly alleges that police officers refused to assist her with her sexual assault case unless she waived her Constitutional rights and confessed to the 2011 theft incident. She alleges "the police officers were the individuals engaging in attempting to waive the rights of [Beverly] while filing a false police report of their own as to [her.]"

Beverly's cause of action for intentional tort alleges that "all named officers within this complaint conspired to take illegal actions against [Beverly] including false arrests . . . out of animus of her gender identity as a sex assault victim . . . in a high profile Hollywood sex assault case where they received phone calls from media they did not want to answer to as a result of this animus . . . ."

Beverly's cause of action for malicious prosecution "integrates all facts stated for the first cause of action of false imprisonment" and is based on the theory "that an individual arrested due to the bigotry of the police officers has a case against the department for violation of U.S. Constitution fourteenth amendment rights of equal protection under the law," citing *Usher v. City of Los Angeles* (9th Cir. 1987) 828 F.2d 556.

Beverly's cause of action for assault and battery "incorporates all facts stated within each cause of action" and alleges that "[t]he false arrests and imprisonments described in this Complaint constitute the acts of assault and battery upon [Beverly] and the subsequent violation of her constitutional rights."

8

Beverly's cause of action for negligence likewise "incorporates all facts stated within all other causes of action," and argues that the Department "failed a duty of care in evaluating the facts of the case before making an arrest for an alleged stolen iphone cord and felony assault upon a security guard . . . ." It further alleges that a detective "neglected his duty of care as a police officer when he declined to forward deposition admission of sex assault . . . . of [Beverly] to the DA for review in that case" and instead "filed charges against [Beverly] for an allegedly stolen drink from a store . . . before he was given the deposition admissions." It alleges that the Department "previously lost DNA evidence in the sex assault case, including underwear, claiming they never received it" despite the fact an officer "admitted to receiving the underwear in a phone call with the Plaintiff."

The Department demurred to Beverly's first amended complaint with a hearing set for April 1, 2022. Beverly filed a 14-page opposition to the demurrer on February 4, 2022. Beverly submitted an additional opposition on March 17, 2022, and a third opposition on March 21, 2022.

On April 1, 2022, Beverly filed a peremptory challenge, under Code of Civil Procedure section 170.6, to the judge assigned to the case. The court denied the challenge as untimely.

The court's tentative decision was to sustain the demurrer with leave to amend as to six of the seven causes of action, and without leave to amend to the malicious prosecution cause of action. The court stated that it had not considered Beverly's "further oppositions" to the demurrer, filed without leave of court, which would have caused her opposing papers to exceed the page limit pursuant to California Rules of Court, rule 3.1113(d).

The court explained its ruling by first noting that while Beverly styled her first cause of action as false imprisonment, it actually stated a claim of false arrest based on the 2011 and 2019 arrests. The court then noted that the existence of probable cause

9

for an arrest is assessed on an objective basis, and in this case, "the face of the pleadings support a showing of 'probable cause' for the arrests." Specifically, Beverly "does not dispute that the officers were responding to calls of reported thefts or assault and made the arrests based on the witness statements."

The court concluded the complaint failed to state a cause of action under either the Bane Act or the Ralph Act because Beverly did not allege "that Defendant's officers used 'threat, intimidation, or coercion,' or 'violence, or intimidation by threat of violence,' in connection with the allegedly wrongful arrests."

The court reasoned Beverly's fourth cause of action styled "intentional tort" was effectively a restatement of her first cause of action with the alleged false arrests being the gravamen of the claim. It consequently concluded the intentional tort cause of action failed for the same reason as the false arrest/imprisonment claim.

The court determined the fifth cause of action for malicious prosecution should be sustained without leave to amend pursuant to Government Code section 821.6, which provides immunity to public employees for injury caused by "instituting or prosecuting any judicial or administrative proceeding within the scope of [] employment, even if he acts maliciously and without probable cause."

The court ruled that the sixth cause of action, for assault and battery, was insufficient because it was also based entirely on the three arrests described in the false arrest/imprisonment cause of action. Because those arrests were supported by probable cause, the officers were entitled to use reasonable force in effectuating them. Beverly did not allege the officers engaged in excessive force.

The court concluded Beverly's seventh cause of action for negligence failed because she did not allege facts showing the Department owed her a duty of care to further investigate the facts before arresting her for the incident at the Apple store in 2019, to forward a deposition admission to the District Attorney, or to not lose DNA

10

evidence in the sex assault case. The court also noted such a claim was likely barred by Government Code sections 815, 815.2, 821.6 and 845.

Although the court's tentative decision was to give Beverly leave to amend six of her seven causes of action, Beverly informed the court she did not intend to amend and preferred instead to stand on the pleading and challenge the court's ruling on appeal. Based on Beverly's representation, the court ordered the entire action dismissed without prejudice.[4]

## DISCUSSION

1.      *Standard of Review*

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.'" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Moreover, "[w]e may also take notice of exhibits attached to the complaints. If facts appearing in the exhibits contradict those alleged, the facts in the exhibits take precedence." (*Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447; see *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 282.) In this case, Beverly attaches the police reports supporting both her 2011 and 2019 arrests; she does not allege that any of the information contained in them was known or suspected by the Department to be untrue when she was arrested. Instead, she alleges the information in the police reports was insufficient to support probable cause for her arrests.

---

[4]      Such a dismissal qualifies as a final judgment for purposes of appeal. (*Abatti v. Imperial Irrigation Dist.* (2012) 205 Cal.App.4th 650, 665 [dismissal without prejudice, absent a stipulation to preserve dismissed claims, is a final judgment].)

11

"[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action." (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.)

Finally, demonstrating the court erred does not necessarily entitle Beverly to a reversal. The judgment will be reversed only if Beverly also demonstrates the error was prejudicial. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside, or new trial granted, in any cause, . . . for any error as to any matter of pleading . . . , unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"]; see *Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963 ["[W]e cannot presume prejudice and will not reverse the judgment in the absence of an affirmative showing there was a miscarriage of justice"].)

2.	*False Arrest/Imprisonment Cause of Action*

Beverly contends that she properly pleaded the elements of her cause of action for "false arrest/imprisonment" because she was "confined against her will by the Newport Beach Police Department, did not consent to the confinement, and the confinement was not privileged." She claims she "denied committing any crimes at the scenes of the incidents and the charges by police were not successful in criminal courts, . . . as there was simply no evidence to even try to prosecute any of them."

However, as Beverly acknowledges in her complaint, the key issue in determining whether an arrest was lawful is whether the police had probable cause at the time the arrest was made. Probable cause is determined by an objective standard. (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1045 (*Gillan*), ["Probable cause is measured by an objective standard based on the information known to the arresting officer, rather than a subjective standard that would take into account the arresting officer's actual motivations or beliefs. [Citation.] The arresting officer's actual

12

motivations or beliefs should play no role in the court's determination of probable cause"].)

Thus, "[p]robable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." (*United States v. Lopez* (9th Cir. 2007) 482 F.3d 1067, 1072, citing *Beck v. Ohio* (1964) 379 U.S. 89, 91.)

Probable cause does not require an arresting officer be certain a crime has been committed. (*People v. Mower* (2002) 28 Cal.4th 457, 473 (*Mower*) ["""Reasonable or probable cause' means such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused.""]; *Levin v. United Air Lines, Inc.* (2008) 158 Cal.App.4th 1002, 1018 (*Levin*), ["""[S]ufficient probability [that a crime has been committed], not certainty, is the touchstone of reasonableness under the Fourth Amendment"""].)

"Information provided by a crime victim or chance witness alone can establish probable cause if the information is sufficiently specific to cause a reasonable person to believe that a crime was committed and that the named suspect was the perpetrator." (*Gillan, supra*, 147 Cal.App.4th at p. 1045.) "[N]either a previous demonstration of reliability nor subsequent corroboration is ordinarily necessary when witnesses to or victims of criminal activities report their observations in detail to the authorities." (*People v. Ramey* (1976) 16 Cal.3d 263, 269.)

In this case, as Beverly concedes in her complaint, both of her arrests were based on statements provided to police officers by witnesses at the scenes of her alleged crimes. Beverly attempts to claim the information provided by those witnesses was insufficient to support probable cause, but does so by citing only selected portions of the statements.

For example, Beverly asserts that the employee witness to the 2011 grocery store incident claimed that "many grocery store items were stolen" which was inconsistent with the fact she was found with only one grocery item in her bag that was otherwise full of her clothing and possessions. But the report indicates the witness reported only that he saw Beverly "placing items" into her bag which made him "believe [she] was stealing items from the store."

In claiming that one aspect of the witness's statement was insufficient to support probable cause, Beverly ignores the rest of his statement, including the fact he went directly to the front of the store and saw her leaving without paying for anything, and that she then fled when he tried to contact her. Beverly also ignores the fact that the police found a still cool carton of almond milk in her bag, and her admission that she had taken it from the store because she was hungry.

The situation is similar in the Apple store incident. Beverly contends the report reflects she was talking to a store employee about a Genius Bar appointment to exchange a phone cord at the time of her arrest. While the report reflects she spoke to a store associate about a Genius Bar appointment after concealing the cord in her hand, it also indicates that when she was advised by that associate to make an appointment with an associate near the front of the store, she instead walked out of the store with the cord still in her hand. After hearing from both the Apple store security guard and Beverly about the incident, the police officer questioned the first Apple store associate Beverly spoke to. The associate confirmed Beverly asked her about a Genius Bar appointment, but she also stated Beverly said nothing about exchanging a charging cord; she never suggested that Beverly leave the store to speak with another associate.

Beverly's allegations that neither police report supports probable cause is conclusory and thus we need not accept it as true for purposes of demurrer. Instead, our own review of the police reports reflects that both contain information sufficient to cause a reasonable person to "'"believe and conscientiously entertain a strong suspicion of the

14

guilt of the accused"'"" (*Mower, supra*, 28 Cal.4th at p. 473) as a matter of law. Consequently, both the 2011 arrest and the 2019 arrest were lawful.

Beverly alleges her third false arrest occurred in the aftermath of the 2019 Apple store arrest, after the police also discovered an outstanding warrant based on her failure to appear in connection with the 2011 incident. She argues the Department had no probable cause to arrest her based on the warrant because it had been issued under her prior name of Brant Skiles, rather than her then-legal name of Brala Beverly, and it was thus presumptively invalid against her.

Beverly fails to allege the police could not have known her true identity. Instead, she alleges both the 2011 and 2019 arrests were motivated by her gender identity and the officers' awareness of her earlier pursuit of the sexual assault claim. She also alleges that during her arrest for the 2019 Apple store incident, an officer "immediately claimed knowledge of [her]," made clear he was aware of her name change, and told her he attributed it to an effort "to avoid prosecution of crimes." Thus, Beverly's own allegations, which we must assume are true for purposes of demurrer, demonstrate the police officers knew that she was the person identified as Brant Skiles in the failure to appear warrant.

Beverly's allegation that she was not subsequently prosecuted or convicted on any of the charges changes nothing. Probable cause is determined based on the information known to the arresting officers at the time of the arrest, not on the subsequent outcome of the related case.

Beverly also argues the court erred by construing her first cause of action as one for false arrest, rather than false imprisonment, despite the fact that "both the title and heading are for the cause of action for false imprisonment." The argument fails. Causes of action are established by the content of the factual allegations comprising them; the title chosen by the plaintiff is immaterial. (*Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 908 ["It has long been established that in ruling on a demurrer, the trial court is

15

obligated to look past the form of a pleading to its substance. Erroneous or confusing labels attached by the inept pleader are to be ignored if the complaint pleads facts which would entitle the plaintiff to relief"].)

In any event, Beverly does not explain why the court's interpretation of the cause of action as one for false arrest rather than false imprisonment was prejudicial to her. She does not contend her allegations sufficiently stated a cause of action for false imprisonment as opposed to false arrest. To the contrary, she claims "that false arrest and false imprisonment are the same."

Because the allegations of Beverly's complaint, including the documents she attached, demonstrate that each of Beverly's arrests was supported by probable cause, the court did not err in sustaining the Department's demurrer to her cause of action for false arrest/false imprisonment.

3.      *Causes of Action Based on the Bane Act and the Ralph Act*

The Bane Act provides a private cause of action for "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with" by a person "whether or not acting under color of law," who uses "threat, intimidation, or coercion." (Civ. Code, § 52.1, subds. (a)-(c).)

"The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." (*Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 883.) A violation of the Bane Act does not require any discriminatory animus. (*Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 843.)

The Ralph Act on the other hand does require discriminatory animus. It provides that "[a]ll persons within the jurisdiction of this state have the right to be free

16

from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or position in a labor dispute, or because another person perceives them to have one or more of those characteristics." (Civ. Code, § 51.7, subd. (b)(1).) Thus, to state a cause of action under the Ralph Act, a plaintiff must allege he or she suffered violence or threat of violence based on actual or perceived race, religion, ancestry, national origin, political affiliation, sex, sexual orientation, age, or disability.

The trial court concluded that Beverly's causes of action under the Bane Act and the Ralph Act were essentially restatements of her false arrest claims under different names, and that they failed to state distinct causes of action because she included no separate allegations that the Department had engaged in any violence, threats of violence, coercion, or intimidation.

Beverly disagrees, claiming that because she alleged discriminatory false arrests, the court wrongly "assume[d] that the arrests did not thereby include 'violence, intimidation or coercion." But the burden is on Beverly to affirmatively allege the facts supporting her theory of liability. She has alleged no violence or threats of violence accompanying her lawful arrests, and thus she fails to state any cause of action under the Ralph Act.

Beverly relies on *Cornell v. City and County of San Francisco* (2017) 17 Cal.App.5th 766 (*Cornell*) for the proposition that an arrest without probable cause can qualify as a Bane Act violation even in the absence of threat, coercion, or intimidation. We agree with her premise. In *Cornell*, our Supreme Court held that "where, as here, an unlawful arrest is properly pleaded and proved, the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable

17

seizure, not by whether the evidence shows something beyond the coercion 'inherent' in the wrongful detention." (*Cornell, supra,* at pp. 801-802.)

But the proposition does not help Beverly here because, in contrast to *Cornell* where the plaintiff's arrest was determined to be without probable cause, the court in this case had already concluded Beverly's arrests were lawful—a conclusion with which we concur. Under these circumstances, *Cornell* does not hold that a Bane Act claim can be established absent some other misconduct, such as threats, coercion, or intimidation.

Even assuming, as Beverly contends, that "[m]aking an arrest due to the gender identity of an individual as a factor in that arrest is a constitutional rights violation under the fourteenth amendment of equal protection [and] a due process violation," in the absence of threats, violence, coercion, or intimidation, such an arrest is not a violation of the Bane Act or the Ralph Act.

Beverly comes closest to pleading a violation of the Bane Act when she alleges that in connection with the 2011 arrest, "arresting officer Sherwood stated she would change testimony about the perpetrator [in Beverly's sex assault] if [Beverly] did not say she took the drink at the scene of this 2011 incident." However, while that unadorned allegation suggests attempted coercion, we find it too vague to state a cause of action. There is no allegation that Sherwood had ever given any testimony in connection with the sexual assault case, or that she was involved in the case as a police officer. There is no suggestion as to what testimony she could have changed. Nor is there any indication where, when, or in what context Sherwood made the alleged statement to Beverly.[5]

---

[5] Because Beverly declined the court's offer of leave to amend, we need not consider whether she might have been able to flesh out this allegation into a cause of action in an amended complaint.

18

Moreover, Beverly's complaint does not identify this specific allegation as the basis of her Bane Act cause of action. Instead, her cause of action recites Sherwood's alleged statement as one of a series of facts which, taken together, Beverly believes demonstrate her 2011 arrest was improperly motivated by her transgender status and earlier "sex assault case." It is the allegedly improper arrest, not the secondary allegations suggesting its impropriety, that is the basis of Beverly's cause of action. Indeed, even in her appellate brief, Beverly identifies the act of "[m]aking an arrest due to the gender identity of an individual as a factor in that arrest" as the "constitutional rights violation" she alleges. [6]

Finally, even if we believed this single factual allegation were sufficient to support a Bane Act cause of action, we would conclude there was no error in sustaining the Department's demurrer to it because the cause of action would have been barred by the statute of limitations. A cause of action under the Bane Act that is based on the violation of a constitutional right is subject to the two-year statute of limitations for injury caused by the wrongful act of another. (Code Civ. Proc., § 335.1; *Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 760.) In this case, Beverly filed her initial complaint in August 2020, nearly nine years after the November 2011 arrest.

The Department's demurrer was based in part on the assertion that each cause of action was barred by the statute of limitations, and while the trial court rejected that assertion because each cause of action was based in part on facts occurring in 2019, that concern would not apply to a Bane Act cause of action that is based solely on alleged misconduct occurring in connection with the 2011 incident.

---

[6] Beverly more directly alleges this act gives rise to liability under the Ralph Act. However, the Ralph Act applies only when the plaintiff is subjected to violence or threats of violence.

4. *The Assault and Battery and Intentional Tort Causes of Action*

Beverly contends the court erred by sustaining the demurrer to her causes of action for assault and battery and intentional tort based on its determination that those claims were effectively restatements of the false arrest cause of action. However, Beverly's arguments actually support the court's reasoning.

With respect to her intentional tort cause of action, Beverly argues that "oppression, fraud or malice are a basis of an intentional tort action" and because she "alleges her constitutional rights were violated in three false arrests whereby there was discriminatory animus . . . this oppression occurred." But because the court had already concluded that her complaint did not establish any claim for false arrest (discriminatory or otherwise), the key element of her "oppression" claim necessarily fails.

Similarly, with respect to the battery cause of action, Beverly asserts that a battery cause of action was stated because "[i]n a discriminatory false arrest, any force was unreasonable." But again, because the court had already concluded that her complaint did not state a claim for false arrest, the key element of her assertion was not established. Reasonable force can be used to effect a lawful arrest (Pen. Code, § 835a), and because Beverly did not allege the officers engaged in any excessive force beyond what is reasonable to effectuate her arrests, no cause of action was stated.

5. *The Court's Consideration of Malicious Prosecution Precedent*

The trial court concluded that Beverly's cause of action for malicious prosecution failed because the officers were entitled to immunity under Government Code section 821.6, which states that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

Beverly contends the trial court erred in this ruling because it "ignore[d] Supreme Court rulings regarding malicious prosecution cases against police." Her specific point seems to be that federal courts, including the Supreme Court in *Thompson*

20

*v. Clark* (2022) 142 S.Ct. 1332, have allowed plaintiffs to state causes of action for damages under title 42 United States Code section 1983—a federal statute—for violation of constitutional rights based on a malicious prosecution theory.

But Beverly is not alleging a cause of action under title 42 United States Code section 1983 because she relinquished her right to pursue federal law claims when she asked the federal district court to remand this case back to state court. Her claim for malicious prosecution arises under California law and is thus subject to the statutory defenses, including immunity, available under California law. We find no error in the court's ruling sustaining the demurrer on the malicious prosecution cause of action.

6.      *Duty of Care*

Beverly's final challenge to the court's analysis of her causes of action is her contention that the court erred in concluding the Department owed her no duty of care to support a negligence cause of action. As Beverly points out, "Police always have a duty to protect the constitutional rights of citizens, regardless [of whether the] Government Code . . . claim[s] otherwise." Her assertion misconstrues the court's ruling.

Beverly's negligence cause of action alleged the Department was negligent by breaching its duty of care in three ways: (1) "in evaluating the facts of the case before making an arrest for an alleged stolen iphone cord and felony assault upon a security guard . . . ," (2) in "declin[ing] to forward deposition admission of sex assault . . . of [Beverly] to the DA for review in that case," and (3) in "previously los[ing] DNA evidence in the sex assault case, including underwear, claiming they never received it" despite the fact an officer "admitted to receiving the underwear in a phone call with the Plaintiff."

The proper question was not whether the Department owed Beverly a general duty of care to protect her constitutional rights but whether it owed her a legal duty of care to do any of those things. She has made no showing that it did.

21

"[D]irect tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care." (*Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183.) In this case, Beverly has failed to cite any statute that imposes on a police department a specific duty of care to do any of the things she bases her negligence claim on. Consequently, she failed to state a cause of action for negligence.

7.      *Trial Court Bias*

Beverly contends the trial court demonstrated bias against her in two ways: first, by accusing her of "imagining" her claims, and second, by assuming the validity of the arrest warrant that was issued in her prior name for failure to appear.

Beverly's first contention is not supported by any evidence. Instead, Beverly seems to be inferring that accusation from the court's reliance on *Levin, supra,* 158 Cal.App.4th 1002, in its minute order. Although the court cited *Levin* for the legal proposition that "'the arresting officer's secret intentions, hopes, or purposes have nothing to do with the legality of the arrest'" (*id.* at p. 1018), Beverly asserts the court "essentially said [the plaintiff in] *Levin* 'imagined' her claims [citation] and [Beverly] could not do the same." There is no evidence in our record of any such statement.

Beverly's second contention is that the court revealed its bias by assuming the failure to appear warrant was valid. As we have already noted, a warrant issued by a court is presumed valid and the burden is on the person contesting it to demonstrate it was not. The court followed the law when it presumed validity. The approach revealed no bias.

8.      *Court's Failure to Read Beverly's Additional Oppositions*

Finally, Beverly argues the court denied her due process by refusing to read her second and third oppositions to the demurrer, filed without leave of court. The court relied on California Rules of Court, rule 3.1113)(d), which limits an opposing memorandum to 15 pages. The court noted that considering any opposition papers

22

beyond the initial 14-page opposition would "exceed the page limit for the responding memorandum."

Beverly argues the court erred because her additional oppositions were "made under declaration" and declarations are not included within the 15-page limitation. Her assertion is unpersuasive. While it is true that Beverly appended a section to the end of her second and third memoranda which she characterized as a "Declaration," and stated she was declaring that the contents of the document were "true and correct to the best of my knowledge," that did not transform her memoranda into declarations.

A "memorandum," as defined in California Rules of Court, rule 3.1113(b), is a document that contains "a statement of facts, a concise statement of the law, evidence and arguments relied on, and a discussion of the statutes, cases, and textbooks cited in support of the position advanced." By contrast, a "declaration" is defined in Code of Civil Procedure section 2015.5 as a factual statement made under penalty of perjury that may be used as evidence in lieu of sworn testimony in certain circumstances. Beverly's second and third filings were comprised almost entirely of legal arguments, including a discussion of cases she believed supported her position. Such legal arguments qualify as legal memoranda, not factual evidence, without regard to whether they are declared to be true.

Beverly also points out that rule 3.1113(d) allows for the filing of longer memoranda in the case of summary judgment motions. But this demurrer was not a summary judgment motion. Instead, Beverly might have looked to rule 3.1113(e), which states that a party can apply ex parte to the court to seek permission to file a longer memorandum, explaining why the arguments cannot be made within the page limit. Beverly failed to do that; we consequently find no abuse of discretion in the court's refusal to read her additional memoranda.

Because we find no error in either the court's ruling or its handling of the matter, we affirm the judgment of dismissal.

23

## DISPOSITION

The judgment is affirmed.  The Department is entitled to its costs on appeal.


GOETHALS, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOTOIKE, J.